IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TAMMY L. GARNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-11-308-RAW-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Tammy L. Garner requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be AFFIRMED

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er]revious work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security

regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born December 5, 1963, and was forty-six years old at the time of the administrative hearing. (Tr. 24, 104). She completed the ninth grade, and has worked as a cashier II and a linen attendant. (Tr. 36, 134). The claimant alleges that she has been unable to work since January 1, 2003 due to arthritis in her hands, knees, and left shoulder, and lower back problems. (Tr. 129).

## Procedural History

On February 6, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Michael A. Kirkpatrick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 1, 2010. (Tr. 11-19). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) perform medium work as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c), except that she was limited to

occasional stooping. (Tr. 15). The ALJ concluded that the claimant could return to her past relevant work as a cashier II or linen attendant. (Tr. 18).

## Review

The claimant contends that the ALJ erred: (i) by improperly assessing her credibility, (ii) by finding that she could return to her past relevant work, and (iii) by finding that she could perform medium work. The undersigned Magistrate Judge finds these arguments unpersuasive, and the decision of the Commissioner should therefore be affirmed.

The medical evidence revealed that the claimant had the severe impairments of arthritis of the hands, knees, left shoulder, and lower back. (Tr. 13). In 1991, the claimant injured her back and underwent surgery on her L-5, S-1. (Tr. 284-295). The claimant was again injured while at work on July 9, 2002, when she placed her foot out to stop a large linen cart. (Tr. 211). She underwent physical therapy for this injury, and was discharged on July 30, 2002, with a note stating that she visited four times and had achieved good relief, that her gait had normalized, and that her goals had been achieved. (Tr. 235). She was released to light duty work in September 2002, and was expected to return to full duty as she began feeling better. A November 18, 2002 doctor's note stated that she could return to work. (Tr. 202-203). A December 3, 2002 MRI of the claimant's right knee revealed some spurring compatible with some degenerative changes, but the doctor noted that she was doing fairly well and working at that time and he would consider cortisone injections in the future as needed. (Tr. 198). On November 14, 2007, the claimant presented to the emergency room with a nosebleed. (Tr. 219). On April

23, 2009, consultative examiner Dr. Mohammed Quadeer assessed the claimant's shoulder and low back pain, and found she had slightly decreased range of motion in her left shoulder, limited range of motion associated with pain and muscle spasms in her lumbar-sacral spine, as well as possible anxiety. (Tr. 247-249). On May 19, 2009, a state physician found no functional mental limitations upon reviewing her record. (Tr. 265).

At the administrative hearing, the claimant testified about her back surgery and leg injury, which she said caused her so much pain she stopped working. (Tr. 26-27). She stated that she had previously received injections in her shoulders and knees, that she did not have a regular physician because she did not have insurance and could not afford treatment, and that she takes approximately twenty Tylenol a day due to pain. (Tr. 28-29, 31). As to her physical impairments, she stated that she could stand about fifteen to twenty minutes at a time, that she could sit twenty to thirty minutes, that she could walk about half a block, and that she could lift a maximum of ten pounds. (Tr. 33-34). Later in the hearing, the ALJ asked the vocational expert ("VE") to identify the claimant's past work, to which the VE responded that the claimant had performed work as a cashier II, which was "light according to the DOT, but may have been heavier as she performed it," and that she had worked as a linen attendant, which was "medium, with an SVP of two. It's unskilled." (Tr. 36). The ALJ then asked the VE to "[a]ssume a hypothetical person with the same age and education as the claimant, and assume that the person could perform medium work, and that the person could stoop occasionally. Could such a person perform any of the claimant's past work?" (Tr. 36). The VE responded that such a person could do both the cashier II and linen attendant jobs. The ALJ then asked the

VE, "Those occupations, then, cashier [II] and linen attendant as they are described in the Dictionary of Occupational Titles and generally performed in the economy require lifting and carrying no more than about 50 pounds occasionally and 25 pounds frequently, standing and walking for up to about six hours total during an eight hour workday with normal breaks, sitting for no more than six hours total during an eight hour workday with normal breaks and no more than occasional stooping, is that correct?" (Tr. 37). The VE answered that it was correct, and also stated that her testimony was consistent with the Dictionary of Occupational Titles. (Tr. 37).

In his written decision, the ALJ summarized the claimant's hearing testimony and the medical evidence. The ALJ noted the claimant's return to work in December 2002 following her on-the-job injury and found that the record provided no objective evidence to support a claim of disability beginning January 2003. (Tr. 16). The ALJ found that because there was little or no medical evidence during the relevant time frame, the lack of ongoing treatment undermined the claimant's credibility as to the severity of her impairments. (Tr. 16-17). The ALJ then summarized the consultative examiner's findings and concluded that her symptoms were "mild to moderate at most," and noted that the claimant had not undergone knee surgery, or extensive physical therapy. (Tr. 17). He then adopted the state reviewing physicians' recommendations that found the claimant had the RFC to perform medium work with only occasional stooping. (Tr. 17-18). In finding that the claimant could perform her past relevant work, the ALJ referred to the VE's testimony as to the claimant's past work and whether a hypothetical person similar to claimant could perform medium work with occasional stooping. He then found

that the claimant had not been unable to perform her past relevant work since her alleged onset date. (Tr. 18). He further stated that he had compared the claimant's RFC with the physical and mental demands of these jobs, and that the claimant was able to perform them as actually and generally performed. The ALJ specifically rejected any further limitations as suggested by the claimant's representative, finding no objective support in the record for further limitations. (Tr. 18).

The claimant first contends that the ALJ erred in his analysis of her credibility. A credibility determination is entitled to deference unless the ALJ misreads the medical evidence taken as a whole. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991). An ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

Regarding credibility, the ALJ noted that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible," and that the "medical evidence of record provides sporadic treatment notes that fail to demonstrate a longitudinal treatment history of regular and consistent treatment visits or a history of ongoing complaints." (Tr. 16). He concluded that her "allegations of pain,

other symptoms, and functional limitations" were not credible. (Tr. 18). The ALJ mentioned the applicable credibility factors and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible. For example, the ALJ mentioned that: (i) despite complaints of residual pain following her 2002 injury, the claimant was returned to light duty work after an MRI was negative; (ii) the record was void of any significant treatment records following her return to work in December 2002, which undermined her credibility; (iii) the consultative examination revealed no significant abnormalities and only mild findings, in contrast with her allegations of severe disability; and (iv) no evidence of emergency room visits for extreme pain or help with pain management. (Tr. 16-18). Although the claimant contends that she did not seek treatment because she could not afford it, the ALJ correctly noted that there was no record of the claimant seeking *any kind of treatment* for her pain. *See Mann v. Astrue*, 284 Fed. Appx. 567, 571 (10th Cir. 2008) ("While Mann claims that her poverty prevents her from seeking further medical care or prescription pain medication, she has provided no evidence that she 'sought to obtain any low-cost medical treatment from her doctor or from clinics and hospitals' or that she has 'been denied medical care because of her financial condition.'") [unpublished opinion], *quoting Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992). The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of her credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

The claimant's remaining two arguments both contend that the ALJ erred in his analysis at step four. Step four has three distinct phases. The ALJ must establish the claimant's RFC, then determine the demands of her past relevant work (both physical and mental), and ultimately decide if her RFC enables her to meet those demands. *See, e. g., Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir. 1996). The ALJ must specify his factual findings at each phase, *see id.* at 1023, and although the ALJ may *rely on* information provided by a VE, "the ALJ himself must make the required findings on the record, including his own evaluation of the claimant's ability to perform h[er] past relevant work." *Id.* at 1025. The claimant contends that the ALJ erred at phase one of step four because he failed to account for her 1991 back injury in formulating her RFC. But the ALJ specifically noted her 1991 back surgery and that she returned to full-time work following that surgery. He concluded, "[t]hus, her allegations concerning her subjective symptoms are found to be credible *only to the extent that she is unable to perform heavy and very heavy work*, but not credible to the extent that they preclude her from all work activities." (Tr. 17) [emphasis added]. The ALJ therefore *did* account for all of her impairments in formulating her RFC.

The claimant last contends that the ALJ failed to properly account for the demands of her past relevant work at phase two, and thus his conclusion that she could perform her past relevant work was not properly supported by evidence. With regard to phase two, the undersigned finds the ALJ's questioning of the claimant at the administrative hearing and the VE's testimony about the exertional and skill levels of the jobs was sufficient to establish the demands of the claimant's past work. (Tr. 36-38). *See, e. g., Westbrook v.*

*Massanari*, 26 Fed. Appx. 897, 903 (10th Cir. 2002) (finding that remand under *Winfrey* is appropriate only when the record is "devoid of even any mention of the demands of past relevant work[.]") [citation omitted] [unpublished opinion]. Even assuming *arguendo* the demands of the claimant's past work were insufficiently developed, the ALJ determined the claimant could return to her past relevant work as a cashier II and linen attendant as she performed it *and as it was generally performed in the national economy*. This finding makes any further inquiry into the actual demands of the jobs unnecessary. *See*, *e.g.*, *Andrade v. Secretary of Health & Human Services*, 985 F.2d 1045, 1050 (10th Cir. 1993) (noting that the ALJ shall consider "the claimant's ability to perform either . . . '[t]he actual functional demands and job duties of a particular past relevant job; or . . . [t]he functional demands and job duties . . . as generally required by employers throughout the national economy.'"), *quoting* Soc. Sec. Rul. 82-61, 1982 WL 31387, at *1. *See also Wise v. Barnhart*, 42 Fed. Appx. 331, 333 (10th Cir. 2002) ("[T]he issue is not whether claimant can return to her actual past job, but to the type of work she performed in the past.") [unpublished opinion], *citing Andrade*, 985 F.2d at 1051. Further, the ALJ made his own phase-three findings that the claimant's RFC did not preclude her performance of past work as a cashier II and linen attendant. (Tr. 18). Although the ALJ clearly relied on the VE's testimony for his phase-three findings, *see Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003) ("An 'ALJ may rely on information supplied by the VE at step four.'"), *quoting Winfrey*, 92 F.3d at 1025, he did not "delegate the analysis to the [VE]." *Id*. ("The ALJ did not delegate the analysis to the vocational expert; instead, he quoted the VE's testimony approvingly, in support of his

own findings at phases two and three of the analysis."). Thus, the ALJ's analysis of the claimant's past relevant work satisfied the requirements set forth in *Winfrey*.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be AFFIRMED. Any objections to this Report and Recommendation must be filed within fourteen days.

**DATED** this 10th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma